UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOE L. BOOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:11-CV-00428 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

Plaintiff Joe Booker appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  PROCEDURAL HISTORY

Booker applied for SSI in February 2009, alleging that he became disabled seventeen years earlier, that is, on January 1, 1992. (Tr. 155-57.) The Commissioner denied his application initially and upon reconsideration, and Booker requested an administrative hearing. (Tr. 81-99.) On June 23, 2010, Administrative Law Judge ("ALJ") John Pope conducted a hearing at which Booker (who was represented by counsel), his cousin, and a vocational expert testified. (Tr. 16-57.)

On December 3, 2010, the ALJ rendered an unfavorable decision to Booker, concluding

---

[1] All parties have consented to the Magistrate Judge. (Docket # 12); *see* 28 U.S.C. § 636(c).

that he was not disabled despite the limitations caused by his impairments because under the Medical-Vocational Guidelines he could perform a significant number of jobs in the economy. (Tr. 61-69.) The Appeals Council denied Booker's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-15, 270-96.)

Booker filed a complaint with this Court on December 28, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) He advances just one argument in this appeal: that the ALJ failed to properly incorporate his finding that Booker had moderate difficulties in maintaining concentration, persistence, or pace into the residual functional capacity ("RFC") that served as the basis for the ALJ's step-five determination.

## II. FACTUAL BACKGROUND[2]

### A. Background

At the time of the ALJ's decision, Booker was forty-eight years old and had a high school equivalency diploma (GED) and vocational training in cooking and plumbing. (Tr. 22, 155, 459.) He served in the military and had past work experience as a cook, restaurant manager, painter, drywall installer, and in remodeling homes. (Tr. 23-25, 68.) He alleges disability due to depression, high blood pressure, hernia, large prostate, headaches, fibromyalgia, and arthritis. (Opening Br. 2.) Because Booker does not challenge the ALJ's consideration of his physical impairments, the Court will focus on the evidence pertaining to his mental limitations.

### B. Booker's Testimony at the Hearing

At the hearing, Booker testified that he had been incarcerated from 1992 to 2008 and that he currently lived with his mother, brother, and niece. (Tr. 21, 25.) He is independent with his

---

[2] In the interest of brevity, this opinion recounts only the portions of the 546-page administrative record necessary to the decision.

self care "[m]ost of the time," mows the loan, and helps his mother with household tasks. (Tr. 33-34.)  His typical day involves watching television in his room for ten or more hours, eating a light lunch, napping, reading, and walking to his aunt's house to spend time with various family members (Tr. 30-33); twice a week he goes to church activities (Tr. 37).  He complained of feeling dizzy and drowsy for several hours each day after taking his medications. (Tr. 29-30.)  Booker also testified that he easily becomes angry, does not like to be around crowds, has difficulty concentrating, and sometimes isolates himself. (Tr. 34-35, 38, 46-47.)

### C.  Summary of the Medical Evidence

In April 2009, Booker was evaluated at Park Center upon referral by the parole division. (Tr. 474-80.)  He presented with relationship problems, sleep difficulties, loss of appetite, loss of interest, and isolation, which were consistent with a depressive disorder. (Tr. 474.)  He reported significant problems with flashbacks, unwanted thoughts, irritability, and constant anxiety related to "past trauma," which he described more particularly as "break ups" with a past girlfriend. (Tr. 476-77.)  He also had excessive worry, poor judgment, minimal insight, depression, anxiety, and anger; he was able to stay on task, however, and his behavior, thought content, thought processes, and memory were normal. (Tr. 476-77.)  He had a moderate level of depression, but no suicidal ideation. (Tr. 477.)  He was diagnosed with polysubstance dependence in full remission and depressive disorder, not otherwise specified, and assigned a Global Assessment of Functioning ("GAF") score of 51.[3] (Tr. 478.)

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 21-30 reflects behavior that is considerably influenced by delusions or hallucinations, a serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation), or an inability to function in almost all areas (e.g., stays in bed all day; has no job, home, or friends). Id.  A GAF score of 31 to 40 reflects some impairment in reality testing or communication (e.g., speech is at times

Also in April 2009, Booker started counseling services at Lutheran Social Services due to "relationship issues" with his girlfriend. (Tr. 481-97.) He was seen for counseling two times in May and two times in June, but the services were terminated in July because the therapist's time as an intern had expired. (Tr. 481-97.) Booker's symptoms included mild depression, moderate anxiety, mild "poor judgment," moderate "poor impulse control," and mild "poor interpersonal skills." (Tr. 481.) He was assigned a GAF score of 70. (Tr. 481.)

In September 2009, Booker was hospitalized for three days after attempting suicide by taking his girlfriend's medication. (Tr. 454-63.) He stated that he had never before considered suicide and that the suicide attempt was impulsive after finding out he was going to have another year added to his parole. (Tr. 457.) Dr. Kevin Murphy, a psychiatrist, assigned him a GAF of 25 upon admission and diagnosed depressive disorder, not otherwise specified, and possible conversion disorder. (Tr. 463.) His GAF upon discharge was 50. (Tr. 455.)

In October 2009, Booker saw Karen Lothamer, a nurse at Park Center, for medication management. (Tr. 467-70.) On mental status exam he was depressed and anxious, and his affect was flat. (Tr. 469.) His thought content and memory, however, were normal, and he had fair judgment. (Tr. 468.) Ms. Lothamer assessed his status as "symptomatic but stable." (Tr. 470.) He was prescribed Lexapro. (Tr. 470.)

---

illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., avoids friends, neglects family, and is unable to work). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* And, a GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id.*

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

### IV.  ANALYSIS

#### A.  *The Law*

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Booker is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

### B. The ALJ's Decision

On December 3, 2010, the ALJ rendered his opinion. (Tr. 61-69.) He found at step one of the five-step analysis that Booker had not engaged in substantial gainful activity since his application date, and at step two, that Booker's depression and polysubstance dependence were severe impairments. (Tr. 63.) At step three, he determined that Booker's impairment or combination of impairments did not meet or equal a listing. (Tr. 65.) Before proceeding to step

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

four, the ALJ found Booker's subjective complaints not credible to the extent they were inconsistent with an RFC for a full range of unskilled work at all exertional levels. (Tr. 66-67.) The ALJ then found at step four that Booker had no past relevant work and thus proceeded to step five, where he concluded under the Medical-Vocational Guidelines that Booker was not disabled. (Tr. 69.)  Consequently, Booker's claim for SSI was denied. (Tr. 69.)

### C.  The ALJ's RFC Is Supported By Substantial Evidence

In his sole argument in this appeal, Booker asserts that the ALJ failed to accurately reflect his findings regarding Booker's moderate deficits in concentration, persistence, or pace in the RFC that served as the basis for the ALJ's step-five determination.  Contrary to Booker's assertion, the RFC assigned by the ALJ is supported by substantial evidence, and thus the Commissioner's final decision will be affirmed.

At steps two and three of the sequential evaluation, the ALJ determines the severity of a claimant's mental impairment by assessing his degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4.  Relevant to this appeal, the "paragraph B" criteria consist of four "broad functional areas":  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). "[T]he limitations identified in the 'paragraph B' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process

requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . ." *Id.*; *see Virden v. Astrue*, No. 11-0189-DRH-CJP, 2011 WL 5877233, at *9 (S.D. Ind. Nov. 4, 2011); *Field v. Astrue*, No. 03-4079-JAR, 2009 WL 1212044, at *7 (D. Kan. May 5, 2009) ("[T]he Commissioner has explained that a mental RFC assessment requires itemizing specific work-related mental activities." (citing SSR 96-8p)). "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2; *see* 20 C.F.R. § 416.945(a)(1).

"The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original); *see* 20 C.F.R. § 416.945(a)(3).  That is, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." SSR 96-8p, 1996 WL 374184, at *7; *accord Field*, 2009 WL 1212044, at *7; *Lawson v. Apfel*, No. IP 99-1112-C H/G, 2000 WL 683256, at *3 (S.D. Ind. May 25, 2000).

Here, when assessing the "paragraph B" criteria at steps two and three, the ALJ concluded that Booker had "moderate" difficulties in maintaining concentration, persistence, or pace, but no deficits in activities of daily living or social functioning. (Tr. 66.)  Then, before reaching step four, the ALJ assigned Booker an RFC for "unskilled work," articulating that this RFC "reflects the degree of limitation [he] found in the 'paragraph B' mental function analysis." (Tr. 66.)

Booker argues, however, that a limitation to "unskilled work" does not adequately account for moderate deficits in the ability to maintain concentration, persistence, or pace because the ability to stay with a given task over a sustained period of time is not the same as the ability to learn how to do tasks of a given complexity.  Indeed, Booker's argument has some merit, as some courts have stated that "[o]nly if a doctor used the descriptive language to describe what work a claimant can perform in spite of [his] limitations can the ALJ use those terms in the RFC . . . ." *Coots v. Astrue*, No. 08-cv-2197, 2009 WL 3097433, at *8 (C.D. Ill. Sept. 22, 2009) (citing *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002)); *see also Conley v. Astrue*, 692 F. Supp. 2d 1004, 1008-09 (C.D. Ill. 2010).

But in this particular instance, an RFC for "unskilled work" is supported by the record. "Unskilled work" is defined in the regulations as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). The Social Security Administration ("SSA") further articulated that the following mental activities are generally required to perform unskilled work: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work (i.e., simple work-related decisions); responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. SSR 96-9p, 1996 WL 374186, at *9.

In limiting Booker to "unskilled work," the ALJ reasonably relied upon the sparse treatment record, the few medical opinions of record, and Booker's activities of daily living and past work history.  To begin, the ALJ noted that although Booker claimed he became disabled in January 1992, the record contains *no* medical documentation prior to February 2007, and

9

Booker's representative confirmed that no medical evidence exists prior to that date. (Tr. 64, 68.) *See Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); 20 C.F.R. § 404.1529(c)(2); SSR 96-7p.

The ALJ then appropriately catalogued what psychological evidence did exist in the record, which was sparse. (Tr. 67-68.) In doing so, he reviewed Booker's three-day inpatient stay at Parkview Behavioral Health in October 2009, his two visits to Park Center in April and October 2009, and his several counseling sessions at Lutheran Social Services from April to June of 2009. (Tr. 67-68.) The ALJ noted that *none* of the medical source opinions of record assigned Booker restrictions that precluded him from performing unskilled work. (Tr. 68.) In fact, the Park Center clinician indicated that Booker "is able to stay on task" and had no memory or thought content problems (Tr. 468-69, 477), and the evaluating clinician at Parkview Behavioral Health found his concentration to be "appropriate" (Tr. 457).

Accordingly, the ALJ observed, and appropriately so, that Booker has not produced any medical source opinion indicating that he lacks the mental activities necessary to perform unskilled work. *See Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) ("[W]here the claimant has the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting, then an RFC of 'unskilled' work would be appropriate."). Of course, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)).

10

And with respect to the GAF scores of 50, 51, and 70 in the record, as the ALJ indicated, "GAF scores are intended to be used to make treatment decisions, . . . not as a measure of the extent of an individual's disability." *Martinez v. Astrue*, No. 9 C 3051, 2010 WL 1292491, at *9 (N.D. Ill. Mar. 29, 2010) (internal quotation marks and citation omitted); *see Curry v. Astrue*, No. 3:09-cv-565, 2010 WL 4537868, at *7 (N.D. Ind. Nov. 2, 2010) ("GAF scores are more probative for assessing treatment options rather than determining functional capacity and a person's disability."). "[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on [his] GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation and internal quotation marks omitted); *accord Adams v. Astrue*, No. 1:06-cv-393, 2009 WL 1404675, at *4 (N.D. Ind. May 18, 2009).

Moreover, in addition to the medical evidence, the ALJ considered that Booker's activities reflected a fairly typical, varied day, which included preparing meals, watching television, visiting his family, going shopping, playing computer games, taking walks, mowing the lawn, and assisting his mother with various household chores. (Tr. 63, 65-66.) He also noted that Booker goes to church activities twice a week and that Booker indicated he has no problem getting along with others. (Tr. 66-67.) In addition, the ALJ considered that Booker performed some skilled work after his alleged onset date. (Tr. 66); *see* 20 C.F.R. § 416.945 (instructing the ALJ to consider all of the relevant evidence in the case record when assessing a claimant's RFC); *see also Gardner v. Barnhart*, No. 02 C 4578, 2004 WL 1470244, at *13 (N.D. Ill. June 29, 2004) (considering a claimant's limitations in activities of daily living when assigning her RFC); SSR 96-8p ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [r]eports of daily activities"). Thus, the ALJ's reliance on Booker's

11

daily activities in assigning him an RFC for unskilled work was reasonable.

At bottom, "an ALJ is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 567816, at *4 (W.D. Wis. Mar. 2, 2005); *see Johansen*, 314 F.3d at 289.  In this particular instance, the record adequately reflects that Booker has the capacity to perform the mental activities identified by the SSA for "unskilled work." *See, e.g.*, *Orucevic v. Astrue*, No. C07-1981 CRD, 2008 WL 4621420, at *7 (W.D. Wash. Oct. 16, 2008) (affirming the ALJ's decision limiting the claimant to "unskilled" work where the record indicated she could perform "simple, repetitive tasks," observing that the SSA's definition of "unskilled" work "describes repetitive tasks as the primary work duty"); *Karger v. Astrue*, 566 F. Supp. 2d 897, 909 (W.D. Wis. 2008) (affirming ALJ's decision where the record indicated that the claimant had the prerequisite mental abilities necessary to perform "unskilled" work).  Consequently, Booker's sole argument in pursuit of remand is unsuccessful.

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Booker.

SO ORDERED.

Enter for this 5th day of November, 2012.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge